**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phoenix Cash and Carry, LLC, ) | No. CV-08-01261-PHX-NVW |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| U.S. Smokeless Tobacco Brands, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

Phoenix Cash and Carry LLC ("Cash and Carry") filed suit against U.S. Smokeless Tobacco Brands Inc. ("U.S. Smokeless") alleging breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and tortious interference claims. (Doc. # 1.)  U.S. Smokeless filed a Motion to Dismiss (Doc. # 12), arguing that Cash and Carry failed to state a claim.  Although the pleadings will support no other cause of action, Cash and Carry has alleged a prima facie case for equitable relief under the doctrine of promissory estoppel.  Therefore, the Motion will be granted in part and denied in part.

**I. Background**

When a defendant moves to dismiss for failure to state a claim, factual allegations contained in the complaint are taken as true. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).  According to the allegations, Cash and Carry operates a tobacco distribution business throughout Arizona.  The company was formed in 2005, and soon after, it sought

to become a distributor for U.S. Smokeless. U.S. Smokeless refused this overture, choosing to do business with another newly formed company instead.

Cash and Carry persevered in its operations and by 2007 had entered into an agreement with Fry's Supermarkets ("Fry's") to supply their Arizona stores with tobacco. In order to meet the Fry's demand for U.S. Smokeless products, Cash and Carry placed weekly bulk orders at other retail stores—Sam's Club and Costco—purchasing over $250,000 worth of U.S. Smokeless products from those stores between January 2007 and May 2007. U.S. Smokeless knew of these arrangements because Cash and Carry told U.S. Smokeless about its relationship with Fry's. Moreover, Cash and Carry's bulk retail orders required advance notice to U.S. Smokeless.

The U.S. Smokeless products at issue have a shelf life of 30 days, after which time they become a loss. In or around March 2007, Fry's found itself with some quantity of expired U.S. Smokeless products. A three-way discussion broke out between Cash and Carry, Fry's, and U.S. Smokeless. Fry's sought confirmation that it could return these products to Cash and Carry. U.S. Smokeless told Cash and Carry that it would credit Cash and Carry for any expired product that Fry's returned. Cash and Carry then accepted returns from Fry's. Contrary to its previous assurance, however, U.S. Smokeless refused to credit Cash and Carry for accepting the returns.

In early May 2007, Cash and Carry had placed large orders for U.S. Smokeless products at Sam's Club. Cash and Carry took delivery of those products, intending to resell them to Fry's. As it turned out, Fry's had agreed to have its parent company supply U.S. Smokeless products and had no need to buy from Cash and Carry any longer. Both Fry's and Cash and Carry asked U.S. Smokeless to accept a return of the products Cash and Carry had purchased. U.S. Smokeless stated that it would accept the returns at Sam's Club. Cash and Carry declined to liquidate the products prior to their expiration date. After the products had expired, Cash and Carry learned that U.S. Smokeless had instructed Sam's Club not to accept its returns.

The members of Cash and Carry are immigrants to the United States and are of Syrian and Armenian descent.

**II. Analysis**

Citing a number of contract and equitable theories, Cash and Carry contends that U.S. Smokeless should bear the losses associated with the two refusals to accept returns. Cash and Carry also contends that U.S. Smokeless wrongfully profited by its behavior and tortiously interfered with the relationship between Cash and Carry and Fry's. U.S. Smokeless moved to dismiss on all counts. Each count will be considered in turn.

**A. Breach of Contract**

Cash and Carry has failed to state a claim for breach of contract because it has failed to allege one of the elements of contract formation: consideration. The alleged promise "is not enforceable at law for the lack of a bargained-for-exchange." *Chewning v. Palmer*, 133 Ariz. 136, 138, 650 P.2d 438, 440 (1982); *accord Muchesko v. Muchesko*, 191 Ariz. 265, 268, 955 P.2d 21, 24 (Ct. App. 1997). Cash and Carry alleges that on two occasions, U.S. Smokeless agreed to accept returns of its products. At the same time, Cash and Carry admits that it had no distribution agreement with U.S. Smokeless. There is no indication that by promising to take returns, U.S. Smokeless obtained any bargained-for benefit for itself or detriment to Cash and Carry. *See K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (Ct. App. 1983).

There is no merit to Cash and Carry's argument that by promising to accept the returns, U.S. Smokeless obtained certain intangible benefits, and that these benefits constituted consideration. It may be true, as Cash and Carry claims, that these promises "smoothed over" the parties' relations in the short term and created an appearance of fair dealing that may have impressed the managers of Fry's. Neither of these benefits was bargained-for in the contractual sense; they are benefits that would attend any number of gratuitous promises that are not enforceable in contract. *See Perry v. Farmer*, 47 Ariz. 185, 188, 54 P.2d 999, 1001 (1936). The same principle governs Cash and Carry's argument that it suffered a detriment by relying on the promises—allowing Fry's to return the products in

the first instance, and abstaining from a fire-sale in the second. Equity may afford redress in such a case, as explained below, but legal consideration is lacking. There is no allegation that U.S. Smokeless sought, through its promises, to control Cash and Carry's actions in the manner Cash and Carry describes. These actions were not bargained for, so they were not consideration. *See Hartford v. Indus. Comm'n of Ariz.*, 178 Ariz. 106, 110, 870 P.2d 1202, 1206 (1994).

### B. Breach of the Implied Covenant of Good Faith

Although Cash and Carry's Complaint is vague, its Opposition brief (Doc. # 13 at 8-9) makes clear that its claim for breach of the implied covenant of good faith and fair dealing (Second Claim) is grounded on the alleged oral contract to accept returns from Fry's, promises allegedly "made . . . in bad faith, with no intention of following through." *Id*. at 9. Because no such contract between U.S. Smokeless and Cash and Carry is sufficiently alleged, the implied covenant of good faith and fair dealing could not attach to it. Thus, there could be no breach of the implied covenant of good faith and fair dealing. That covenant does not arise in the absence of a contractual relationship. *Norman v. State Farm Mut. Auto Ins. Co.*, 201 Ariz. 196, 203, 33 P.3d 530, 537 (Ct. App. 2001); *see also Rawlings v. Apodaca*, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986); *Restatement (Second) of Contracts* § 205 (1981).

Cash and Carry does not allege or argue any other contract that was breached by lack of good faith and fair dealing.

### C. Promissory Estoppel

Regardless of its failure to allege any breach of contract, however, Cash and Carry may yet proceed with its action under the doctrine of promissory estoppel.[1] Cash and Carry has alleged that on two specific occasions, U.S. Smokeless promised to accept returns of its products. It further alleges that Cash and Carry took U.S. Smokeless at its word and

---

[1] As part of its general claim of unjust enrichment, Cash and Carry alleges that it detrimentally relied on promises by U.S. Smokeless. The parties address this portion of the claim under the separate heading of promissory estoppel, and the Court follows suit.

- 4 -

reasonably relied on each of these promises to its detriment. These allegations will support a claim for equitable relief. *Chewning,* 133 Ariz. at 138, 650 P.2d at 440; *Higginbottom v. State*, 203 Ariz. 139, 144, 51 P.3d 972, 977 (Ct. App. 2002). In the first instance, Fry's had asked Cash and Carry whether a return of expired U.S. Smokeless products was possible. U.S. Smokeless said it would accept returns, and Cash and Carry took the expired products back from Fry's in reliance on this promise. Cash and Carry bore the loss when U.S. Smokeless refused the returns. In the second instance, Cash and Carry placed an order for U.S. Smokeless products unaware that it no longer had any sale to make at Fry's. The problem was realized before the tobacco products expired, and allegedly U.S. Smokeless agreed once again to accept the return via Sam's Club. The return was ultimately refused once the product had expired and lost any liquidation value it might have had. It was not unreasonable to rely on both promises; U.S. Smokeless could plausibly be expected to accept returns under either set of circumstances, and Cash and Carry had no "knowledge to the contrary." *Higginbottom*, 203 Ariz. at 144, 51 P.3d at 977.

U.S. Smokeless attempts to avoid this cause of action by reformulating the facts. This effort is unavailing. Contrary to the suggestions of U.S. Smokeless, the allegations explicitly state that Cash and Carry accepted returns from Fry's in reliance on the first promise. The allegations also explain that Cash and Carry relied in the second instance by declining to liquidate its unsold tobacco products—there is no assertion that Cash and Carry relied by ordering from Sam's Club. Cash and Carry placed that order before it learned that Fry's would not be purchasing, and before the promise was made to accept return of that sale.

Finally, U.S. Smokeless argues that any claim for promissory estoppel must fail because equitable relief is not available where an express contract governs the subject of the dispute. It is true that promissory estoppel cannot be used by parties to circumvent the terms of their express agreements. *See Mann v. GTCR Golder Rauner LLC*, 425 F. Supp. 2d 1015, 1032 (D. Ariz. 2006). It is also true that in some cases, estoppel is unavailable even though the express contract is not between the plaintiff and the defendant. *See Stratton v. Inspiration Consol. Copper Co.*, 140 Ariz. 528, 531, 683 P.2d 327, 330 (Ariz. App. 1984);

- 5 -

*In re New Motor Vehicles Can. Export Antitrust Litig.*, 350 F. Supp. 2d 160, 210 (D. Me. 2004). The cases cited by U.S. Smokeless are distinguishable from the case at bar, however. Cash and Carry's position is not akin to that of a subcontractor attempting to recover against a third party for the general contractor's non-payment under the subcontract. *See Stratton*, 140 Ariz. at 529-30, 683 P.2d at 328-29. Nor is Cash and Carry trying to sue up the chain of distribution for an equitable redetermination of retail purchase price. *See Antitrust Litig.*, 350 F. Supp. 2d at 210. The alleged promises by U.S. Smokeless arose subsequent to, and independent of, Cash and Carry's contractual relationship with Sam's Club. They were a gratuitous benefit, conferred and made enforceable after the fact by detrimental reliance. On the face of the complaint, no Sam's Club contract gives U.S. Smokeless refuge from its own separate promises. In effect, these promises are collateral transactions, the subject matter of which is not governed by any express agreement. *See Mann*, 425 F. Supp. 2d at 1032.

### D. Other Unjust Enrichment

Cash and Carry does not limit its equitable claim to promissory estoppel, but alleges and argues unjust enrichment on a broader level. "To establish a claim for unjust enrichment, a party must show: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy." *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 202 Ariz. 535, 541, 48 P.3d 485, 491 (Ct. App. 2002). The allegations state that in connection with Cash and Carry's loss, U.S. Smokeless "avoided the financial liability" of accepting the returns.[2] Cash and Carry also alleges that U.S. Smokeless enjoyed "enhanced customer satisfaction" by promising to accept returns.

---

[2] Cash and Carry states that U.S. Smokeless "was able to sell Cash and Carry's final order for Fry's twice; once to Cash and Carry and again to Fry's after U.S. Smokeless took over the account." The equitable appeal of this statement is superficial. U.S. Smokeless did not sell the same lot twice—a situation that might cry out for restitution. Rather, U.S. Smokeless made two sales of two separate lots, one of which was a losing deal for Cash and Carry. The loss associated with that sale is identical to the "financial liability" avoided by rejecting the returns.

- 6 -

The enrichment pled—avoidance of financial liability—is functionally identical to the reliance damages pled under the heading of promissory estoppel. This enrichment is unjust if it is proven that Cash and Carry reasonably relied on U.S. Smokeless's promises. Cash and Carry pleads no other basis for equitable relief. The allegations make out no plausible, unjustified connection between Cash and Carry's loss and U.S. Smokeless's customer goodwill. *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). Therefore, no claim for unjust enrichment has been stated, except to the extent that it finds expression in the doctrine of promissory estoppel.

### E. Tortious Interference

In its last two claims for relief, Cash and Carry asserts tortious interference with contract and tortious interference with business expectancy. The pleadings are not clear as to the scope or terms of any specific contract with Fry's. A contract existed between the parties as to certain tobacco transactions but not others. Regardless of this uncertainty, however, Cash and Carry has failed to plead any improper interference on the part of U.S. Smokeless. For that reason, both interference claims are insufficient.

In Arizona, a claim for intentional interference with contract or business expectancy requires the plaintiff to prove that the defendant knew of and intentionally interfered with such a relationship. *Neonatology Assocs., Ltd. v. Phoenix Perinatal Assocs. Inc.*, 216 Ariz. 185, 187, 164 P.3d 691, 693 (Ct. App. 2007). "In addition, the interference must be improper as to motive or means before liability will attach." *Id.*

Cash and Carry claims that U.S. Smokeless brought about the end of its relationship with Fry's. It argues that this action was improperly motivated by racial animus toward Cash and Carry's members, who are of Middle-Eastern descent. Such allegations, if true, are regrettable, but they will not support an intentional interference claim in this instance. The competition privilege protects the conduct. *See Miller v. Hehlen*, 209 Ariz. 462, 471, 104 P.3d 193, 202 (Ct. App. 2005). Cash and Carry alleges that U.S. Smokeless took over the Fry's account by shipping directly to the Fry's parent company rather than to an independent middle man. U.S. Smokeless's choice was therefore a competitive one; U.S. Smokeless

competed with Cash and Carry for the Fry's account. "[A] competitor does not act improperly if his purpose at least in part is to advance his own economic interests." *Id.*

### F. Conclusion

Except for the promissory estoppel claims, the Complaint as written states no claim for relief. Plaintiff has not sought leave to amend or suggested how the Complaint might be cured as to any of the deficiencies. Therefore, the motion to dismiss will be granted, with prejudice, except for the promissory estoppel claims.

IT IS THEREFORE ORDERED that the Defendant's Motion to Dismiss for failure to state a claim is denied as to the promissory estoppel and granted in all other respects.

IT IS FURTHER ORDERED that Plaintiff's Complaint is dismissed with prejudice for failure to state a claim upon which relief can be granted, except for promissory estoppel.

DATED this 7th day of November, 2008.

_____
Neil V. Wake
United States District Judge